*Notice: This opinion is subject to correction before publication in the Pacific Reporter. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| DAVID A. BRAGG and RHETTA K. BRAGG, | ) ) Supreme Court No. S-17787 |
| | ) |
| Appellants, | ) Superior Court No. 4FA-17-03084 CI |
| | ) |
| v. | ) O P I N I O N |
| | ) |
| TIMOTHY TESLOW, | ) No. 7661 – June 16, 2023 |
| | ) |
| Appellee. | ) |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Earl A. Peterson, Judge.

Appearances: Robert John, Law Office of Robert John, Fairbanks, for Appellants. John J. Tiemessen, Clapp Peterson Tiemessen Thorsness LLC, Fairbanks, for Appellee.

Before: Winfree, Chief Justice, Maassen, Borghesan, and Henderson, Justices. [Carney, Justice, not participating.]

BORGHESAN, Justice.

## I.    INTRODUCTION

A Fairbanks man cut a stand of trees on his neighbor's property after the neighbor had moved out and put the property up for sale. The couple that bought the property sued the man who cut the trees. After negotiations failed the couple did not oppose summary judgment, apparently believing that their claims were not viable. The superior court issued an award of full attorney's fees against them, concluding that their

claims were frivolous and that they filed the lawsuit with an improper purpose. The court then denied their motion under Alaska Civil Rule 60(b) for relief from the judgment.

Because one of the couple's claims was not frivolous and because the finding of improper purpose was clearly wrong, we vacate the full fee award and remand the issue of fees for further consideration. But because the incompetent advice of the couple's attorney is not a ground for relief from judgment under Civil Rule 60(b), we affirm the denial of relief from the judgment.

## II. FACTS AND PROCEEDINGS

### A. Facts

David and Rhetta Bragg are the owners of a 20-acre lot in a Fairbanks subdivision. The lot was previously owned by Wallace Cox. In July 2016 David Bragg and Cox entered into a $450,000 agreement to purchase the lot. At the time of the agreement Cox had moved out of Alaska.

Timothy Teslow is the owner of an adjacent 6-acre lot. Teslow's driveway, which he shares with another neighbor, runs across the Braggs' land. A properly recorded deed of easement protects the driveway, which was constructed more than fifty years ago.

In August 2016 Teslow leveled a birch grove near the boundary between the two properties. The grove included approximately 40 mature birch trees, many of which were 40 to 50 feet tall. Teslow chipped the trees into mulch.

The Braggs took possession, but not yet ownership, of Cox's land in mid-September. Before finalizing the sale, David Bragg hired a surveyor, who determined that the birch stumps lay within Cox's property. The Braggs nevertheless closed the property transaction at the previously appraised and agreed-upon price of $450,000.

The Braggs retained an attorney, Valerie Therrien. Therrien sent a letter to Teslow accusing him of illegally building his driveway and stone wall on the Braggs'

property, cutting down the birch grove, and trespassing via a cleared path.  The letter threatened litigation and asked Teslow to "acknowledge [his] trespassing actions."

Teslow responded via email.  He welcomed the Braggs to the neighborhood and promised to stop maintaining the path through their land.  Teslow explained that another neighbor with knowledge of easements had constructed the shared driveway through the Braggs' property years ago.  Teslow admitted that he had cut the trees in question but asserted that he had Cox's permission to thin them.

## B.    Proceedings

### 1.    Underlying litigation

The Braggs filed a complaint against Teslow and his wife that asserted that Cox had assigned his claims against the Teslows to the Braggs.[1]  The complaint alleged an encroachment claim based on the stone wall, an encroachment claim based on the driveway, and a claim under AS 09.45.730 for damages caused by cutting the birch trees (the timber trespass claim).[2]

The Braggs settled with Teslow's wife for $10,000, leaving Teslow as the sole defendant.  As part of the settlement, Teslow's wife provided the Braggs with an affidavit stating that the Teslows knew that Cox's property was for sale, knew that Cox had left Alaska, and cut the trees in question to improve the Teslows' view.

Teslow moved for summary judgment in January 2019.  He sought to dismiss the Braggs' encroachment claims, asserting that the driveway and stone wall in

_____

[1]    The assignment of a legal claim conveys a "proprietary right to a debt, money, or thing that can be recovered through a lawsuit" and may include tort claims. *Dapo v. State, Dep't of Health & Soc. Servs., Off. of Child's Servs.*, 509 P.3d 376, 383 (Alaska 2022).  Most legal claims are assignable, and Teslow does not dispute that Cox made a valid assignment of the claims.  *Id.*

[2]    AS 09.45.730, Alaska's timber trespass statute, provides that "[a] person who without lawful authority cuts down, girdles, or otherwise injures or removes a tree, timber, or a shrub on . . . the land of another person . . . is liable to the owner of that land . . . for treble the amount of damages that may be assessed in a civil action."

question had existed since 1969 and 1986, respectively, and were covered by a properly recorded easement.

Teslow also sought to dismiss the Braggs' timber trespass claim. First, he argued that because the Braggs purchased the property "as-is," the Braggs knew or should have known the trees had been cut before they closed on the property. Second, Teslow argued that because the trees were cut before the Braggs possessed or owned the property, the Braggs did not personally suffer any harm and so could not recover any damages. Third, Teslow asserted that Cox did not suffer any damages either, so his assignment of claims to the Braggs gave them no basis for recovery. Teslow argued that property owners may recover the cost of restoring a property only when they have a personal reason for restoring the land, and Cox had no such reason because he planned to sell the land.[3] And Cox suffered no diminution in the land's fair market value, Teslow argued, because Cox sold the property for the same price — $450,000 — agreed upon before the trees were cut.

The parties attempted but failed to settle. Teslow then asked the superior court to rule on his summary judgment motions. Two days later the Braggs filed non-oppositions to the motions. The superior court granted summary judgment in Teslow's favor on all claims.

### 2. Enhanced attorney's fees

Teslow then moved for attorney's fees. Teslow argued that the superior court should award him full — or at least significantly enhanced — fees because the Braggs' claims were so frivolous as to constitute bad faith.[4] The Braggs opposed Teslow's motion, submitting affidavits from Therrien, Cox, and David Bragg.

---

[3] A personal reason justifying restoration damages exists only when "the owner holds property primarily for use rather than for sale." *Galipeau v. Bixby*, 476 P.3d 1129, 1135 (Alaska 2020).

[4] *See* Alaska R. Civ. P. 82(b)(3) (permitting variation from prescribed fee schedule based on a variety of factors, including vexatious and bad faith conduct).

Therrien's affidavit catalogued the hours that she, her paralegal, and a contract attorney had spent on the case, their rates, and incidental charges incurred during the litigation.

Cox's affidavit disputed Teslow's account of the permission Cox had given Teslow to trim trees on the land. According to Cox, he granted Teslow permission to "trim the trees professionally if needed" — not to cut the trees "down to stumps."

David Bragg's affidavit attempted to explain the couple's decision not to oppose Teslow's summary judgment motion. Bragg stated that Teslow's attorney had led the Braggs to believe "that there was nothing ever keeping anyone from doing this in the future because there was no provable loss of value," and that they had "learned through the litigation of this case that it is difficult to assign a monetary value to a living, mature birch grove." Bragg represented that they "did not resist the [s]ummary [j]udgement after being threatened by [Teslow's] attorney that if [they] did anything to require additional discovery he would push to trial." Teslow's attorney further represented that if the Braggs "won the trial, Teslow would then undoubtedly push to appeal at multiple levels until [they] were unable to financially fight this anymore." These assertions led the Braggs to conclude "that discussions are futile, and this change is best sought through legislation." The Braggs "*needed* Teslow to prevail . . . [because doing so] not only inhibits him from appealing in the future, but gives the requirement for legislative change much more credibility."[5] The Braggs were "convinced that lawmakers will make efforts to close the loophole on similar timber trespass cases based on the results of this court's ruling." Teslow characterized the Braggs' explanation as "plainly disingenuous" and farfetched.

---

[5]     Emphasis in original.

In February 2020 Therrien submitted a second affidavit explaining that she had spent "at least three to four hours researching the law and reviewing the information that [the Braggs] provided" before "review[ing] the information [she] could find at the Recorders' Office." She claimed to have searched the Department of Natural Resources website for the recorded easements and came to believe that the Braggs "had a case with regard to those issues as the exact placement of the encroachments was not clear." She stated that the parties orally agreed to drop the encroachment claims before their failed settlement negotiations. But she conceded that she "should have drawn up a stipulation to dismiss those claims."

The superior court awarded Teslow full fees amounting to $71,123, finding that the Braggs had engaged in bad faith and vexatious conduct.

First, the court found that Therrien had failed to adequately investigate the legal and factual bases for the Braggs' complaint. It concluded that Therrien could not have adequately investigated the Braggs' encroachment claims without encountering the recorded deed of easement and subdivision plat. The court also chastised the Braggs for failing to advance a legal theory that would entitle them to recover damages for timber trespass when they did not own the property at the time of trespass and when the owner, Cox, apparently suffered no financial loss.

Second, the court found that the Braggs had attempted to use the court system "as a vehicle to influence another branch of government." The court interpreted David Bragg's affidavit to mean that he had sought to "win the affection of the legislature by filing a factually and legally baseless lawsuit, subjecting his neighbor to tens-of-thousands of dollars in legal fees . . . after he [knew] his claims [had] no basis in the law, and then intentionally losing by non-opposing summary judgment." In other words the superior court found that the Braggs had initiated litigation and refused to settle with Teslow because the Braggs' primary litigation objective, from the beginning, had been to manufacture a sympathetic story with which to lobby the legislature.

The Braggs moved for reconsideration of the superior court's enhanced attorney's fees award. The motion was denied.

### 3. Motion for relief from judgment

In June 2020 the Braggs moved to vacate the summary judgment ruling on the timber trespass claim.[6] David Bragg supplied a second affidavit that contained two new factual assertions: (1) his opinion that Teslow's tree-felling reduced the fair market value of the property by between $35,000 and $45,000 and (2) the value of the lost timber alone was between $5,000 and $15,000. Therrien also submitted her own, third affidavit stating that the Braggs did not oppose Teslow's summary judgment motion because she had "misunderstood the law" and that she had overlooked the Braggs' nominal and punitive damages claims.

The superior court denied the motion. The court expressed skepticism that the Braggs' original claims or any alternative claims for relief had merit. It remained convinced that the Braggs' purported goal to pursue legislative change shaped their litigation decisions.

The Braggs sought reconsideration of the order denying their motion for relief from judgment. In a third affidavit David Bragg further explained their litigation decisions. When he and his wife filed their lawsuit, Bragg explained, Therrien told them that their case was a "slam dunk." The Braggs' decision to file non-oppositions was likewise a product of mistaken legal advice from Therrien, who had come to believe that their timber trespass claim lacked adequate proof of damages. In Bragg's words: "Based upon that mistaken legal advice, we considered that there was no point in continuing the case thereafter. We then decided to save both sides further legal expenses by agreeing to the entry of summary judgement."

---

[6] Alaska R. Civ. P. 60(b) (authorizing court to grant relief from judgment). The Braggs did not move to vacate the court's order dismissing their two encroachment claims.

The superior court acknowledged that Therrien's third affidavit "all but admit[ted] malpractice." But it denied the Braggs' motion for reconsideration, explaining that the remedy for legal malpractice "lies elsewhere."

Teslow moved for an award of supplemental fees incurred in opposing the Braggs' motion for relief from judgment. The superior court awarded Teslow the full sum requested, $7,284.

The Braggs appeal the two attorney's fees awards against them and the superior court's order denying relief from judgment.

## III. STANDARD OF REVIEW

"We review an award of attorney's fees under Alaska Civil Rule 82, including an award of enhanced attorney's fees, for abuse of discretion."[7] "[I]n general, a trial court has broad discretion to award Rule 82 attorney's fees in amounts exceeding those prescribed by the schedule of the rule, so long as the court specifies in the record its reasons for departing from the schedule."[8] But courts may not grant fee awards that are "arbitrary, capricious, manifestly unreasonable, or the result of an improper motive."[9] When reviewing an enhanced fee award, we generally assess the legal and factual viability of parties' claims de novo and review findings of fact for clear error.[10]

We review orders declining to grant relief under Civil Rule 60(b) for abuse of discretion.[11] "A decision constitutes [an] abuse of discretion if it is arbitrary,

_____

[7] *Sykes v. Lawless*, 474 P.3d 636, 646-47 (Alaska 2020) (quoting *Herring v. Herring*, 373 P.3d 521, 528 (Alaska 2016)).

[8] *Kollander v. Kollander*, 400 P.3d 91, 95 (Alaska 2017) (quoting *Kollander v. Kollander*, 322 P.3d 897, 907 (Alaska 2014)).

[9] *Sykes*, 474 P.3d at 647 (quoting *Keenan v. Meyer*, 424 P.3d 351, 356 (Alaska 2018)).

[10] *Id*.

[11] *Schindler v. Schindler*, 474 P.3d 648, 649 n.2 (Alaska 2020) (quoting *Cook v. Cook*, 249 P.3d 1070, 1077 (Alaska 2016)).

capricious, [or] manifestly unreasonable."[12]   We will not disturb Rule 60(b) orders "unless we are left with 'the definite and firm conviction on the whole record that the judge ha[s] made a mistake.' "[13]

## IV.   DISCUSSION

### A.   We Vacate The Awards Of Full Attorney's Fees To Teslow.

The prevailing party in civil litigation is generally entitled to an award of partial attorney's fees.[14]   The superior court may vary the award from the standard fee schedule in response to a variety of factors.[15]   But it may award full fees only upon a finding of bad faith and vexatious conduct.[16]   Such conduct includes claims or motions that are "collectively or individually so lacking in merit that it is permissible to infer that [the non-prevailing party] or his lawyer acted in bad faith or engaged in vexatious litigation conduct."[17]   We equate bad faith with "[d]ishonesty of belief or purpose."[18]

_____

[12]   *Id.* (alterations in original) (quoting *Gunn v. Gunn*, 367 P.3d 1146, 1150 (Alaska 2016)).

[13]   *Chena Obstetrics & Gynecology, P.C. v. Bridges ex. rel. S.B.*, 502 P.3d 951, 957 (Alaska 2022) (alteration in original) (quoting *Williams v. Williams*, 252 P.3d 998, 1004 (Alaska 2011)); *Schindler*, 474 P.3d at 649 n.2 ("Generally, '[w]e review orders denying Alaska Civil Rule 60(b) relief for abuse of discretion.' " (alteration in original) (quoting *Cook*, 249 P.3d at 1077)).

[14]   Alaska R. Civ. P. 82.

[15]   Alaska R. Civ. P. 82(b)(3).

[16]   *See Johnson v. Johnson*, 239 P.3d 393, 403 (Alaska 2010) ("[F]ull fees may not be awarded under Rule 82(b)(3) except under Rule 82(b)(3)(G)."); *Crittell v. Bingo*, 83 P.3d 532, 536 n.20, 537-38 (Alaska 2004) (affirming Rule 82(b)(3) full fees award because record supported findings of vexatious and bad faith conduct); *Aloha Lumber Corp. v. Univ. of Alaska*, 994 P.2d 991, 1003 (Alaska 1999) (explaining that full fees could not be awarded based on finding of frivolousness alone).

[17]   *Johnson*, 239 P.3d at 401 (citing *State, Dep't of Revenue, Child Support Enf't Div. v. Allsop*, 902 P.2d 790, 795-96 (Alaska 1995)).

[18]   *Id.* at 400 (quoting *Bad Faith*, BLACK'S LAW DICTIONARY (8th ed. 1999)).

The superior court emphasized frivolous filings and bad faith when it awarded Teslow $71,123 and, later, an additional $7,284 in enhanced attorney's fees. The court relied on both Therrien's failure to adequately investigate the legal and factual bases for the Braggs' complaint and the Braggs' apparent non-judicial purpose. The reasoning in the superior court's enhanced attorney's fees decision mirrored that in its supplemental attorney's fees decision. We therefore address the two together.

The Braggs argue that the superior court misconceived the purpose behind their lawsuit and that their timber trespass claim had merit. We agree with the Braggs and vacate the award of full attorney's fees, remanding for further consideration.

### 1.    The finding of improper purpose is clearly erroneous.

The superior court faulted David Bragg for "knowingly litigat[ing] a losing claim against his neighbor in the hopes of obtaining a non-judicial remedy." Bragg, the superior court found, "believes that he can win the affection of the legislature by filing a factually and legally baseless lawsuit, . . . continuing to subject his neighbor to tens-of-thousands of dollars in legal fees after he knows his claims have no basis in the law, and then intentionally losing by non-opposing summary judgement." The superior court drew this conclusion based on two excerpts from Bragg's first affidavit:

> We *needed* Dr. Teslow to prevail in this [s]ummary [j]udgement. Dr. Teslow prevailing not only inhibits him from appealing in the future, but gives the requirement for legislative change much more credibility. We are convinced that lawmakers will make efforts to close the loophole on similar timber trespass cases based on the results of this court's ruling.
>
> . . . .
>
>     . . . Simply put, this case requires modification to existing law to ensure the intent of the law is met in all situations, and acceptance of the [s]ummary [j]udgement was the price to be able to address legislative change without surrendering our rights as property owners and the binding

confidentiality and non-disparagement clauses that had been demanded during the settlement exchanges.[19]

Read in isolation these statements suggest that the Braggs initiated the lawsuit in bad faith. But the rest of Bragg's first affidavit suggests otherwise. According to Bragg, he and his wife had mistakenly come to believe "through the litigation of this case" that it is difficult to assign monetary value to a stand of living trees. Only "after the failed settlement attempts" did the Braggs conclude that "this change is best sought through legislation." The Braggs did "NOT concede and never will that [their] claims had no factual support or legal merit."

While David Bragg's affidavit is not free from ambiguity, the much more plausible reading is that the Braggs began the lawsuit believing that it had merit, but later mistakenly came to believe that the law foreclosed relief. The Braggs then elected not to oppose summary judgment rather than settle on unfavorable terms. It was clear error to conclude that the Braggs initiated litigation with an improper purpose.

### 2. The Braggs' timber trespass claim was not meritless.

There is a difference between claims that do not succeed and those that are so "baseless and unsupported" as to justify a full fee award.[20] In *Johnson v. Johnson* we overturned a full fee award for a denied motion because "[t]he issue is not whether [a litigant's claims or motions] were ultimately unsuccessful, but whether they were collectively or individually so lacking in merit that it is permissible to infer that [the litigant] or his lawyer acted in bad faith or engaged in vexatious litigation conduct."[21]

The Braggs do not defend the merits of their encroachment claims. The Braggs did not ask the superior court for relief from judgment on these claims and do not address the merit of these claims on appeal.

_____

[19]    Emphasis in original.

[20]    *Johnson*, 239 P.3d at 404.

[21]    *Id*. at 401.

The Braggs do argue that they should not be held accountable for their attorney's failure to conduct basic inquiries at the recorder's office before filing these encroachment claims. But their argument rests on a statement taken out of context. In *Crittell v. Bingo* the superior court awarded full fees after finding that a losing party's underlying claims were fraudulent and that the party prosecuted those claims in a fraudulent manner.[22] On appeal the losing party attacked a straw man, arguing that its counsel's litigation conduct was not improper under Alaska Civil Rule 11.[23] We observed that the "professionalism and conduct of the [party's] attorney was never at issue," quoting the superior court's explanation that its enhanced fee award was "due to the parties' behavior, not the conduct of counsel."[24] We held that the losing party could not avoid enhanced fees merely by showing that its counsel's conduct did not violate Rule 11. That holding does not mean that a party is immune to enhanced fees under Rule 82 when its counsel's litigation conduct is deficient.

To the contrary, we held in *Johnson v. Johnson* that the superior court may award full fees when a losing party's motions "were collectively or individually so lacking in merit that it is permissible to infer that [the litigant] *or his lawyer* acted in bad faith or engaged in vexatious litigation conduct."[25] In that case we affirmed full fee awards with respect to some motions that were filed by a litigant's attorney.[26] Although we concluded that the represented litigant's other motions were not so baseless as to justify full fees, we did not foreclose the superior court from awarding enhanced fees on remand.[27]

---

[22]    83 P.3d 532, 537 (Alaska 2004).

[23]    *Id.* at 537 n.22.

[24]    *Id.*

[25]    239 P.3d at 401 (emphasis added).

[26]    *Id.* at 404, 410.

[27]    *Id.*

Here the superior court correctly reasoned that "if the court denies full attorney[']s fees to Dr. Teslow, the court is harming Dr. Teslow and not just providing the [Braggs with] relief from the consequences of their own poor conduct." The purpose of a full fees award is not just to punish bad faith litigants; it is to protect earnest litigants from the cost of frivolous litigation. It is not error to award full or enhanced attorney's fees against a party for bringing frivolous claims even when the party's attorney is at fault.

But the Braggs' timber trespass claim was not devoid of merit. The Braggs' amended complaint sought damages under AS 09.45.730 via an assignment from Cox. One measure of damages under AS 09.45.730 is the value of the timber cut.[28] Even if Cox could not recover the cost of restoring the property and did not suffer a diminution in fair market value, he did lose the value of that timber, which was not only cut but removed from his property and ground into mulch. The timber from 40 mature birch trees is worth something. Teslow's alleged timber trespass inflicted measurable damages on Cox, who assigned his claims to the Braggs.

Alternatively, a showing that Teslow trespassed intentionally would permit Cox and, by assignment, the Braggs to recover nominal damages and potentially punitive damages.[29] Trespass includes activities that exceed the scope of permitted

---

[28] *Andersen v. Edwards*, 625 P.2d 282, 288-89 (Alaska 1981).

[29] *Brown Jug, Inc. v. Int'l Bhd. of Teamsters,* 688 P.2d 932, 938 (Alaska 1984); *see Anchorage Chrysler Ctr., Inc. v. DaimlerChrysler Motors Corp.*, 221 P.3d 977, 997 (Alaska 2009) ("To support a claim for punitive damages, the plaintiff must show 'by clear and convincing evidence that the defendant's conduct was outrageous, such as acts done with malice, bad motive, or reckless indifference to the interests of another.' " (quoting *Brandner v. Hudson*, 171 P.3d 83, 89 (Alaska 2007))); *Casciola v. F.S. Air Serv., Inc.*, 120 P.3d 1059, 1065 (Alaska 2005) (explaining seven statutory factors relevant to determining appropriate punitive damages award).

entry.[30]  The Braggs submitted two affidavits from Cox explaining that he had granted Teslow permission to "trim the trees professionally if needed" — not to cut the trees "down to stumps."  Cox further stated that he "had previously advised [Teslow] about 10 [years] ago that he could trim the trees on [Cox's land]" but that "the cutting the trees all down by Timothy Teslow's agents was not within [his] authorization."  The Braggs' timber trespass claim was not so lacking in merit as to imply bad faith and justify a full fee award. [31]

Because two of the predicate findings for the award of full fees were wrong, we vacate the award and remand for further consideration of Teslow's motion for enhanced fees.

### B.    We Affirm Denial Of The Braggs' Motion To Vacate.

The superior court may relieve a party from a final judgment due to "mistake, inadvertence, surprise or excusable neglect."[32]  The superior court declined to grant the Braggs relief in this case.

"[A]n attorney's failure to act responsibly toward his or her clients when the attorney reasonably could be expected to do so constitutes inexcusable neglect" that does not justify relief from judgment.[33]  But the Braggs do not assert that Therrien's conduct was excusable.  Rather, the Braggs contend that the superior court should have nonetheless granted their motion to vacate under an "injustice exception" to Civil Rule

---

[30]    *Matanuska Elec. Ass'n, Inc. v. Weissler*, 723 P.2d 600, 605-06 (Alaska 1986) (holding party trespassed when it cut trees beyond the scope of owner's permission).

[31]    *See State, Dep't of Revenue, Child Support Enf't Div. v. Allsop*, 902 P.2d 790, 795-96 (Alaska 1995) (assessing the viability of non-prevailing party's argument and reversing full attorney's fee award because the party's "legal position [was] tenable and not so devoid of merit as to indicate a bad faith or vexatious intent").

[32]    Alaska R. Civ. P. 60(b)(1).

[33]    *Chena Obstetrics & Gynecology, P.C. v. Bridges ex. rel. S.B.*, 502 P.3d 951, 961 n.43 (Alaska 2022).

60(b)(1). In *Chena Obstetrics & Gynecology, P.C. v. Bridges ex. rel. S.B.* we held that no such injustice exception exists when an attorney's conduct was inexcusable.[34] Here, as in *Chena*, Therrien's neglect was inexcusable.[35] Therrien's shortcomings therefore cannot justify relief under Rule 60(b)(1) — regardless of any injustice that may result.

The Braggs also argue that they should have prevailed under the catch-all provision in Civil Rule 60(b)(6). But we rejected a similar argument in *Chena*.[36] We held that attorney neglect must rise to the level of abandoning a client to warrant relief under Civil Rule 60(b)(6).[37] Therrien's actions reveal confusion and incompetence, not abandonment. "If a client's chosen counsel performs below professionally acceptable standards, with adverse effects on the client's case, the client's remedy is not reversal, but rather a legal malpractice lawsuit against the deficient attorney."[38] We affirm the superior court's denial of the Braggs' motion to vacate.[39]

## V.   CONCLUSION

We VACATE and REMAND the superior court's award of full attorney's fees and AFFIRM the superior court's order denying relief from judgment.

_____

[34]     *Id.* at 958-59.

[35]     *See id*. (holding that unfamiliarity with Alaska law did not justify counsel's failure to correct error).

[36]     *Id.* at 960.

[37]     *Id.* at 963.

[38]     *Nelson v. Boeing Co.*, 446 F.3d 1118, 1119 (10th Cir. 2006).

[39]     We do not address the superior court's denial of reconsideration because the Braggs waived this issue on appeal. "An issue is considered abandoned . . . if the appellant inadequately briefs the issue." *Sengul v. CMS Franklin, Inc.*, 265 P.3d 320, 330 n.41 (Alaska 2011) (quoting *Jurgens v. City of North Pole*, 153 P.3d 321, 326 (Alaska 2007)). Although the Braggs mention their two motions for reconsideration in their statement of the case, nowhere in their opening or reply briefs do the Braggs provide substantive arguments addressing error in the court's denial of reconsideration.